IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SCOTTY THYNG,            )
                         )
        Plaintiff,       )
                         )
    v.                   )        CIVIL NO. 05-10987-RGS
                         )
FEDERAL EMERGENCY        )
MANAGEMENT AGENCY,       )
        Defendant.       )
_____)

DECLARATION OF EMILY HIRSCH

I, Emily Hirsch, state as follows:

1. I am a Hydraulic Engineer for the Hazard Identification Section, Risk Identification Branch, Mitigation Division, Federal Emergency Management Agency ("FEMA"). In that capacity I have administrative responsibility over appeals from proposed Flood Insurance Rate Map (FIRM) determinations, including Letters of Map Revisions (LOMRs) as required for the National Flood Insurance Program ("NFIP").

2. Prompted by the Complaint filed by the above-captioned Plaintiff, I have reviewed the information within the National Flood Insurance Program system of records and my testimony is based on this review and my present knowledge.

3. The FIRM identifies the applicable Special Flood Hazard Area ("SFHA") by zone and appropriate risk. *See* 44 C.F.R. §§ 59.1; 64.3. The various premium rate zones are identified by symbol, as set forth in 44 C.F.R. § 64.3(a)(1) and as explained in further detail at http://www.fema.gov/fhm/fq_gen13.shtm. For example, several of the relevant zone designations include:

**Zone AE and A1-A30**
Zones AE and A1-A30 are the flood insurance rate zones that correspond to the 1-percent annual chance floodplains that are determined in the Flood Insurance Study by detailed methods of analysis. In most instances, Base Flood Elevations derived from the detailed hydraulic analyses are shown at selected intervals within this zone. Mandatory flood insurance purchase requirements apply.

**Zone VE**
Zone VE is the flood insurance rate zone that corresponds to areas within the 1-percent annual chance coastal floodplain that have additional hazards associated with storm waves. Base Flood Elevations derived from the detailed hydraulic analyses are shown at selected intervals within this zone. Mandatory flood insurance purchase requirements apply.

**Zones B, C, and X**
Zones B, C, and X are the flood insurance rate zones that correspond to areas outside the 1-percent annual chance floodplain, areas of 1-percent annual chance sheet flow flooding where average depths are less than 1 foot, areas of 1-percent annual chance stream flooding where the contributing drainage area is less than 1 square mile, or areas protected from the 1-percent annual chance flood by levees. No Base Flood Elevations or depths are shown within this zone. Insurance purchase is not required in these zones.

http://www.fema.gov/fhm/fq_gen13.shtm.

4.      Plaintiff Scotty Thyng is the owner of a parcel of waterfront land at 202 Manet Avenue, Quincy, Massachusetts (the "property"), part of which was included in a SFHA.

5.      In 2003, plaintiff sought a Letter of Map Amendment (LOMA) and asked FEMA to remove the property from the SFHA based on alleged errors in the FIRM. The LOMA request was based on an evaluation of the lowest elevation point on plaintiff's property and a request to remove the property from the SFHA by virtue of a determination that the lowest point on the property was higher than the Base Flood Elevation (BFE). By a LOMA for the City of Quincy dated August 28, 2003, FEMA amended the FIRM, but a portion of plaintiff's property that was below the BFE

remained in the SFHA.

6.   By a letter dated June 18, 2004, Mr. Thyng submitted a request to FEMA for a LOMR that would revise the FIRM to remove his property from the SFHA, based largely on the existence of a sea wall on the property. Exhibit 1, attached hereto. The request was assigned Case number 04-01-055P. In support of the LOMR, Mr. Thyng did not provide additional scientific or technical data (namely information to address the sea wall's ability to withstand the 1% annual chance flood event nor a wave height analysis), but made available more up-to-date and detailed topographic information than was used to prepare the FIRM that allowed an evaluation of the entire property, not merely based on the lowest elevated point on the property.

7.   On August 3, 2004, a FEMA mapping contractor from Dewberry and Davis spoke with Mr. Thyng and advised him that additional data and payment of a processing fee were needed to process the LOMR request. The contractor also informed plaintiff that the LOMR might result in a determination that the earlier LOMA was essentially correct. On August 17, the contractor confirmed the earlier conversation with a letter requesting additional data and processing fee. Specifically, the contractor requested the following scientific and technical data: a signed copy of MT-2 Form 1 ("Overview and Concurrence Form"); as built plans, back-up documentation and calculations, maintenance plan and MT-2 Form 3 ("Coastal Structures Form") for the seawall; a site-specific, detailed coastal flood hazard analysis using a Wave Height Analysis for Flood Insurance Studies model and a wave runup model; a certified topographic map for the entire parcel, and an annotated FIRM.

8.   On August 30, 2004, Mr. Thyng requested that FEMA confirm that a

portion of his property at 202 Manet Avenue, Quincy, Massachusetts, is located outside of a Special Flood Hazard Area (SFHA), and that FEMA respond to other questions related to flood mapping. Exhibit 2. Specifically, he asked that FEMA confirm the LOMA that Section One is Zone C and not in a SFHA; the site is in an SFHA designated Zone A3-11; there is a 30-foot splash zone behind the seawall; and the seawall is at Elevation 12.3 feet NGVD'29, and it contains the 100-year storm (except the splash zone). In this e-mail he also inquired about whether the splash zone is considered a SFHA

9. On October 21, 2004, FEMA issued a Special Response letter to Mr. Thyng indicating that the property located at 202 Manet Avenue, Quincy, Massachusetts lies in three effective flood hazard zones (Zone A3, with an elevation of 13 feet National Geodetic Vertical Datum ("NGVD"), Zone A3 elevation 11 foot NGVD, and Zone C). *See* Exhibit 3. Specifically, a review of the topographic data submitted in support of the LOMR request indicated that a significant portion of Section One is located below the established BFE of 11 feet NGVD and therefore, is still located in Zone A3 (Elevation 11 feet); and a "splash zone" is typically depicted as a Coastal High Hazard Area (Zone V). Significantly, FEMA also advised that a detailed analysis of wave runup and wave overtopping were not performed for the seawall at 202 Manet Avenue and were not reflected on the effective FIRM and accordingly, FEMA could not confirm whether the seawall will contain all forces associated with the base flood event. FEMA also explained that updated and/or more detailed hydrologic, hydraulic, and/or topographic data could be submitted in support of his LOMR request. The information in the Special Response letter was based on a review of the existing information used to prepare the effective Flood Insurance Study and FIRM and on the information submitted by the

plaintiff.

10. On January 5, 2005, FEMA issued a proposed LOMR revising the Flood Insurance Rate Map (FIRM) for the City of Quincy, Massachusetts to become effective on April 22, 2005. The LOMR explained that FEMA had reviewed data provided by Mr. Thyng and revised the BFE and FIRM accordingly. The LOMR proposed that the FIRM would be revised to <u>increase</u> the Special Flood Hazard Area on Mr. Thyng's property, rather than decrease the flood area, leaving only portion of the property outside of the designated flood plain. *See* Exhibit 4.

11. An individual who is dissatisfied with a LOMR or other mapping change may appeal the decision to FEMA within 60 days of our second publication of the proposed mapping change in a local newspaper. The only basis upon which FEMA can review an appeal of a LOMR is whether the appellant possesses information that shows that FEMA's flood elevation determinations were scientifically or technically evidence incorrect.

12. By email letter dated April 20, 2005, Mr. Thyng appealed the LOMR and provided documentation in support thereof. *See* Exhibit 5. Mr. Thyng attached a one-page letter dated August 30, 2004 from Dean Savramis, a FEMA Region 1 Mitigation Division employee with responsibility over National Flood Insurance Program mapping issues, responding to a facsimile sent by Mr. Thyng on August 27, 2004. Exhibit 5-A. In that email, Mr. Savramis explained that a Letter of Map Amendment (LOMA) issued for development purposes may be subject to State or local floodplain management requirements that are more stringent than FEMA's minimum standards.

13. Mr. Thyng noted in his appeal letter that he had met with Mr. Savramis on

September 20, 2003, and that Mr. Savramis had provided him with a topographical map that Mr. Thyng had used in furtherance of a "NOI" application to the "DEP." The topographical map is attached as an exhibit to Mr. Thyng's appeal. *See* Exhibit 5-B. On that map, Mr. Thyng marked the "11" NGVD contour line" that he asserted was identical "within a few feet horizontally" of the field topographic survey that he claims to have done independently. *See* Exhibit 5.

   14.   Further, Mr. Thyng explains that he previously had received a LOMA on the property, and asserts without supporting evidence that "it became clear that the FIRM SFHA line was intended to be the seawall." *Id*. He states that the FEMA contractor (Dewberry) had suggested that a field topographic "could probably remove the entire parcel from the SFHA as it was fairly obvious that the curvilinear line was indicative of a seawall." *Id*. Mr. Thyng states he did not do this because his "foundation needed 25' setback anyway and the line was only @ 30' from the seawall." *Id*.

   15.   Mr. Thyng explains as the basis for his appeal that FEMA "has confused the seawall line with the 11" NGVD topo grade and feels the "LOMA was 'way off.' This is obviously untrue as even the topo you provided shows the grade line roughly where it ended up." *Id*.   Further, as the primary assertion in his appeal, Mr. Thyng states:

> More importantly however is to get back to the original purpose of my submission, which [FEMA] does not even address.  The combination lot of primarily A3-11 is fully protected by modern poured concrete seawall built in 1960 by state and federal agencies to code and which has elevation of 12.3 NGVD – effectively protecting and removing the entire parcel from SFHA.

*Id*. Mr. Thyng does not address FEMA's conclusion in the Special Response Letter that

the effectiveness of the seawall had not been tested or verified, and he did not present any evidence to contradict FEMA's conclusions regarding the seawall.

16. Mr. Thyng also attached miscellaneous correspondence, maps, and other information that he previously had submitted to FEMA or to Dewberry (on January 7, 2004, January 5, 2004, and January 5, 2004) as part of his appeal. *See* Exhibits 5-C, 5-D, 5-E, and 5-F. The correspondence speculates as to the sources of flooding in the areas surrounding Mr. Thyng's property and attempts to distinguish his property from other areas in flood hazard areas, but he provides no new evidence and no scientific evidence, specifically hydraulic or hydrologic evidence, to show that the Base Flood Elevation by FEMA was in error.

17. Finally, Mr. Thyng claims that he lived in a house next door to the subject property that did not sustain major damage after a storm in 1991, and he attaches an insurance claims file to show the limited scope of flooding. *See* Exhibit 5-G.

18. The information submitted by Mr. Thyng in support of the appeal did not include additional scientific and technical data that contradicts FEMA's Base Flood Evidence determination such that it would warrant a revision to the determination of the April 22 LOMR. Specifically, he does not provide scientific and technical data such as coastal flood hazard analysis and back-up documentation and calculations for the seawall. Without that information, FEMA has no appropriate scientific or technical basis to revise the FIRM. The information that Mr. Thyng provided to FEMA and other information available to FEMA indicates that portions of the property are below the base flood elevation and that the seawall will be overtopped by the storm surge during the base flood. To change this determination on the seawall and the mapping of the floodplain

FEMA would require the information as set forth in our *Guidelines and Specifications for Flood Hazard Mapping Partners Appendix D Guidelines for Coastal Flooding Analyses and Mapping* Pages D-29 and D-30. *See* http://www.fema.gov/pdf/fhm/frm_gsad.pdf. These guidelines explain that in order to credit the seawall as providing protection against flood, FEMA requires an engineering certification that the wall is stable and will withstand the base flood. At this time we have such little information on the seawall that we are unable even to assess if it is stable and will remain intact though a base flood and whether it will be high enough to keep the storm surge off of the property. If the seawall were able to be certified, but is not of sufficient height to prevent sea water from the property, FEMA would still be unable to determine the amount of overtopping and how far back the splash zone from the overtopped seawall because we do not have a certified elevation of the seawall height. In any event, Mr. Thyng did not provide FEMA with the scientific or technical evidence to allow FEMA to evaluate the seawall and verify that it provided the protection sought by him.

19. Accordingly, on July 27, 2005, FEMA denied Plaintiff's appeal. See Exhibits 6 and 7.

The exhibits attached hereto are true and correct copies of the same.

In accordance with 28 U.S.C. § 1746, I hereby declare and affirm under penalty of perjury that the above statements are true and correct to the best of my knowledge, information and belief.

Signed this 9th day of August 2005.

*[signature]*

**Emily Hirsch**
**Hydraulic Engineer**

<u>Scotty Thyng v. Federal Emergency Management Agency</u>, C.A. 05-10987-RGS
Exhibits in Support of Declaration of Emily Hirsch, dated 8/9/05

# EXHIBITS 1 thru 7

# ARE NOT SCANNED DUE TO VOLUME

# Hard Copy filed in Clerk's Office